# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| DIANE HARRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:22-cv-0643-JHE |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a slip and fall case.  Through her now-governing First Amended Complaint, Plaintiff Diane Harrell brings claims under Alabama state law for negligence and wantonness against Defendant Wal-Mart Stores East, LP ("Wal-Mart").  (Doc. 19 ("Amended Complaint" or "Amd. Compl."))[1].  The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and the parties have consented to an exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).  Now pending is Wal-Mart's motion for summary judgment filed pursuant to Rule 56, Fed. R. Civ. P.  (Doc. 23).  The parties have filed briefs (Docs. 24, 31, 33) and evidence (Docs. 25, 32, 35, 36) in support of their respective positions on the motion, which is now ripe for decision.  Plaintiff has stipulated to the dismissal of her wantonness claim.  (Doc. 31 ("Pl. Brief") at 3 n. 1).  Accordingly, Wal-Mart's motion for summary judgment

---

[1] References to ("Doc(s). ____") are to the Document Number(s) of the pleadings, motions, orders, and other materials in the court file, as compiled and enumerated on the docket sheet by the Clerk of the Court.  Pinpoint citations to deposition testimony are to the page of the reporter's transcript.  Pinpoint citations to surveillance video recordings are to the time stamp display.  Unless otherwise noted, pinpoint citations to other documents are to the page of the electronically filed PDF document in the court's CM/ECF system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

will be granted on that claim.  With respect to the remaining claim for negligence, however, the undersigned concludes that Wal-Mart's motion for summary judgment is due to be denied.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial."  *Id.* at 324.  (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat

a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (*citing Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 252).

## II. Background[2]

On the evening of January 18, 2021, Plaintiff went to pick up a prescription at a Wal-Mart Neighborhood Market, operated by Defendant Wal-Mart, located at the Palisades shopping center in Birmingham.  (Amd. Compl., ¶ 5; Doc. 25-2, Deposition of Plaintiff Diane Harrell ("Pl. Depo.") at 77-79).  The parties do not dispute that, a few seconds after entering the store, Plaintiff suffered injuries when she slipped and fell, at about 6:13 p.m. and 51 seconds.  (*See* Amd. Compl., ¶¶ 5-6; Doc. 24 ("Dft. Brief") at 2).

The parties' summary judgment evidentiary submissions include three store surveillance video recordings, which have synchronized time stamp displays.  (*See* Doc. 25-3, Defendant's Exhibit C, Bates No. Wal-Mart_000016, display caption "Entrance_Grocery_01_Stanley_Cam" ("Stanley Cam Video"); Doc. 32-1, Plaintiff's Exhibit A, Bates No. Wal-Mart_000018, display caption "Entrance Grocery Vestibule" ("Vestibule Video"); and Doc. 32-5, Plaintiff's Exhibit E, Bates No. Wal-Mart_000017, display caption "Entrance_Grocery_02_Deli_Side" video ("Deli

---

[2] Consistent with the review standards applicable to a motion for summary judgment, the facts recited in this section are taken from the pleadings where undisputed and from evidence submitted by the parties, construed in the light most favorable to the non-moving party, here, the Plaintiff.  Accordingly, these are the facts accepted for purposes of summary judgment but do not necessarily represent the actual facts.  *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1332 (11th Cir. 2023).

3

Side Video")).  These depict the area where Plaintiff fell and/or ones adjacent from different angles, from one hour before the incident to one hour afterwards.[3]

Plaintiff entered the store building through the front doors and proceeded into a vestibule. (*See* Vestibule Video at 6:13:40 to 6:13:45 PM).  The vestibule floor area was covered with brown tiles, which were separated by a transition strip at the threshold of the main grocery store area, which had lighter, beige colored tiles with small brown flecks.  (*See* Pl. Depo. at 93-94, 124-126; Ex. 3 to Pl. Depo, Doc. 25-2 at 73; Ex. 2 to Pl. Depo., Doc. 25-2 at 72; Doc. 32-2 at 9-15; *see also generally* Vestibule Video; Deli Side Video, Stanley Cam Video).  Plaintiff walked through the vestibule where she passed a Wal-Mart greeter employee who was standing to Plaintiff's left by an A-frame sign, handing out masks and holding a computer tablet to keep count of the customers in the store.[4]  (*See* Pl. Depo. at 85, 91-92, 122-123; Vestibule Video and Deli Side Video at 6:13:40 to 6:13:50 PM; Doc. 25-1, Deposition of Susan Michael ("Michael Depo.") at 11).  Plaintiff crossed over the threshold transition strip and took a few steps onto the light-colored tiles of the store area whereupon her foot slid forward, and she fell to the floor.  (Stanley Cam Video and Vestibule Video at 6:13:45-6:13:55; Pl. Depo. at 85, 102-105, 118, 125-128).

The greeter employee, named Susan Michael, saw that Plaintiff had fallen and went over to help her.  (*See* Vestibule Video, Deli Side Video, and Stanley Cam Video at 6:13:49 to 6:13:55

_____

[3] Some of the key disagreements at summary judgment stem from the parties' differing interpretations of just what can or cannot be seen on the video recordings and, in turn, of what facts a jury could reasonably find from them when considered along with other evidence, including various photographs and witness testimony.  The undersigned will not undertake to identify those disagreements in this "Background" section; rather, they will be addressed as necessary in the "Discussion" section below.

[4] The incident in this case occurred during the COVID-19 pandemic, during which Wal-Mart had adopted certain safety protocols.  (*See* Smelcer Depo. at 60-61; Michael Depo. at 10-11).

PM; Pl. Depo. at 95, 123-124; Michael Depo. at 58-59). Plaintiff acknowledges that, at first, she did not at first know what had caused her to fall. (Pl. Depo. at 104). She had not seen anything on the floor before that, explaining that she was looking straight ahead, not down, as she walked. (Pl. Depo. at 96-97). She also conceded that she had not immediately felt like she had stepped on something. (Pl. Depo. at 118). According to Plaintiff, however, when the greeter employee came over, she immediately pointed to an object on the floor and said to Plaintiff, "This is what you done slipped on, baby." (Pl. Depo. at 85; *see also id.* at 104, 106, 110). Plaintiff says she looked and saw something "up under [her] feet" (*id.* at 102-103; *see also id.* at 106, 110, 129), "kind of caught up … under the heel of [her] boot." (*Id.* at 105). Plaintiff states it was a broken piece of brown tile. (*Id.* at 100-102, 106).[5] Some minutes later, after Plaintiff had been helped into a chair, she photographed the piece of tile where it laid on the floor. (*Id.; see* Exhibit 2 to Pl. Depo., Doc. 25-2 at 72; *see also* Doc. 32-2 ("Incident Report") at 11-14, Wal-Mart_00010 to _00014; Doc. 25-5, Deposition of Ronald Culpepper ("Culpepper Depo.") at 49-54). Plaintiff testified that she "know[s] for certain" that she slipped on that broken piece of tile because her foot slipped, and the piece was right up under her heel when she was on the floor. (Pl. Depo. at 105).

Plaintiff estimated that the broken piece of tile was about the width of two of the stickers being used to mark exhibits during her deposition, or perhaps "a little bigger." (Pl. Depo. at 111-12). Those stickers each measure 1 and 3/8 inches in length (*see* "Defendant's Exhibit" Sticker on Exhibit 2 to Pl. Depo., Doc. 25-2 at 72), which would make the subject piece of tile about three

---

[5] For her part, Michael denies pointing out any pieces of broken tile to Plaintiff or otherwise suggesting to her what she, Michael, might have thought had caused Plaintiff to fall. (Michael Depo. at 138-139). Of course, Plaintiff's contrary testimony must be credited at summary judgment.

inches long.  Plaintiff further indicated that the piece of tile was about two inches "thick."  (Pl. Depo. at 112).  Plaintiff testified that the side facing up as it sat on the floor when she first saw and photographed it was the same brown color as the tiles in the vestibule.  (Pl. Depo. at 107-108, 137-138; *see also* Culpepper Depo. at 52-53 (acknowledging that the color of the subject piece of tile was "similar" to that of the vestibule tiles)).  Plaintiff further states that she noticed, at some point after she fell, that, just a few feet away, one of the brown tiles of the vestibule floor was cracked and had an area of missing tile material.  (Pl. Depo. at 89, 104-105).  Plaintiff testified she believes this cracked brown tile in the vestibule is the source of the broken tile piece upon which she allegedly slipped.  (Pl. Depo. at 107-108, 115-117, 119-121).

Plaintiff's right ankle, knee, and leg were injured in the fall, and Wal-Mart employees called an ambulance.  (Pl. Depo. at 85-86, 139-141).  When it arrived, emergency medical technicians treated Plaintiff at the scene and transported her to the emergency department at UAB Highlands.  (Pl. Depo. at 85-89, 148).  Plaintiff subsequently filed this action against Wal-Mart, claiming that it is subject to premises liability for her injuries.  (Doc. 1).

### III. Discussion

Wal-Mart has moved for summary judgment on Plaintiff's negligence claim, which is governed by Alabama substantive law.  *See Mendez v. Wal-Mart Stores East, LP*, 67 F.4th 1354, 1359 (11th Cir. 2023).  However, the procedural aspects of the case, including as it relates to determining whether evidence is legally sufficient to submit an issue to a jury is a question of federal law.  *Goggans v. Target Corp.*, 2021 WL 5298900, at *3 (11th Cir. Nov. 15, 2021) (*citing*

*Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969)[6];

*Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982)).

The elements of negligence in a premises liability case in Alabama "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Byrne v. Fisk*, ___ So. 3d ___, ___, 2023 WL 3558245, at *2 (Ala. May 19, 2023) (quoting *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (internal quotation marks and further citations omitted)).  Wal-Mart does not contest that Plaintiff suffered injuries when she fell.  The elements contested by Wal-Mart's motion, rather, relate only to duty, breach, and the proximate cause of Plaintiff's fall.  Wal-Mart also claims it cannot be liable because the hazard was allegedly "open and obvious" and thus should have been avoided by Plaintiff.

## A.     Duty and Breach

"The duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the landowner's land, *i.e.*, is the injured party a trespasser, a licensee, or an invitee." *Byrne*, ___ So. 3d at ___, 2023 WL 3558245, at *2 (quoting *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010)).  The parties agree that Plaintiff was an invitee.  (Dft. Brief at 19; Pl. Brief at 10).  As such, Wal-Mart owed Plaintiff a "duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Byrne, supra* (quoting *Galaxy Cable*, 58 So. 3d at 98).

---

[6] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

However, "[t]he owner of a premises ... is not an insurer of the safety of his invitees ... and the principle of *res ipsa loquitur* is not applicable.  There is no presumption of negligence which arises from the mere fact of an injury to an invitee."  *Ex parte City of Muscle Shoals*, 257 So. 3d 850, 857 n. 2 (Ala. 2018) (citations omitted); *see also Goggans*, 2021 WL 5298900, at *2.  Rather, the "basis of an invitor's liability rests upon [his] superior knowledge of the danger which causes the invitee's injuries.  Therefore, if that superior knowledge is lacking, … the invitor cannot be held liable."  *Byrne*, ___ So. 3d at ___, 2023 WL 3558245, at *9 (*quoting Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1194 (Ala. 2002)); *see also Goggans, supra*.

### 1.  Open and Obvious Condition

Wal-Mart's motion for summary judgment does not contest that the broken piece of tile on the floor, upon which Plaintiff claims to have slipped and fallen,[7] might be deemed a hazardous condition.  Wal-Mart argues, however, that it did not breach any duty owed to Plaintiff for a variety of reasons.  Among these is that Wal-Mart did not have a duty to warn Plaintiff because the piece of tile was an "open and obvious" condition.  (Dft. Brief at 19-25).  Under Alabama law, the duty of a possessor of land to warn of or remedy a dangerous condition is obviated when the condition is "open and obvious," regardless of whether the landowner might have had notice of it.  *See Owens v. Ganga Hosp., LLC*, 352 So. 3d 1172, 1175 (Ala. 2021); *Daniels v. Wiley*, 314 So. 3d 1213,

---

[7] Wal-Mart's motion for summary judgment challenges not only duty and breach but also proximate cause.  As to the latter, Wal-Mart specifically contests the sufficiency of the evidence to support that Plaintiff did, in fact, slip on the broken piece of tile.  (*See* Wal-Mart Brief at 14-18).  The undersigned will address that argument separately in the text below.  However, for purposes of considering logically and analytically antecedent issues related to duty and breach, including whether the piece of tile was open and obvious, the undersigned assumes for the sake of argument that the evidence is sufficient to support that Plaintiff did slip on that object, as she claims.

1223-25 (Ala. 2020); *Ex parte Gold Kist, Inc.*, 686 So. 2d 260, 261-62 (Ala. 1996); *see also Wallace v. Tri-State Motor Transit Co.*, 741 F.2d 375, 376-77 (11th Cir. 1984)   The open-and-obvious doctrine may thus be viewed as a sort of corollary to the issue of whether a legal duty exists. *See Lawson v. Wal-Mart Stores, East, LP*, 2019 WL 3790214, at *9 & n. 18 (N.D. Ala. Aug. 9, 2019); *Blalock v. Wal-Mart Stores East, LP*, 2007 WL 1412445, at *3 (M.D. Ala. May 11, 2007).  Nevertheless, the Alabama courts formally treat the doctrine as an affirmative defense upon which the defendant has the burden of proof.  *See Byrne*, 2023 WL 3558245, at *9; *Gray v. L.B. Foster Co.*, 761 F. App'x 871, 873 (11th Cir. 2019); *Lawson, supra*.

A hazardous condition is "open and obvious" if the plaintiff had actual, subjective knowledge of it, *see McClurg v. Birmingham Realty Company*, 300 So. 3d 1115, 1119 (Ala. 2020), or the hazardous condition would be recognized by an objective, reasonable person in the plaintiff's position in the exercise of ordinary care.  *See Owens*, 352 So. 3d at 1176-1177; *see also Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006) ("[T]he question is whether the danger should have been observed, not whether in fact it was consciously appreciated") (*citing Sessions*, 842 So. 2d at 653-54).  It is often said that whether a condition was open and obvious is generally a jury question.  *See Byrne*, ___ So. 3d at ___, 2023 WL 3558245, at *9.  Nevertheless, a defendant may prevail on the issue at summary judgment by establishing that the condition was open and obvious as a matter of law, meaning that such is the only reasonable conclusion to be drawn from the evidence.  *Id.*; *see also McClurg*, 300 So. 3d at 1119.

Plaintiff denies having seen anything on the floor before she fell, stating that she was looking straight ahead and not down at the floor as she walked.  (Pl. Depo. at 96-97).  Accordingly, the record does not establish that the piece of tile was open and obvious based on the theory that Plaintiff had actual knowledge of it.  *See, e.g., Williams v. Bruno's, Inc.*, 632 So. 2d 19, 22 (Ala.

9

1993) (holding that items in supermarket aisle on or near the floor were not open and obvious where the plaintiff stated he did not see items until after he fell).  The question at summary judgment thus becomes an objective one: whether the only conclusion to be drawn from the evidence is that the piece of tile would have been open and obvious to a reasonable person.

This inquiry generally encompasses an examination of all circumstances relevant to the visibility and apparent hazardousness of the condition at issue.  These factors might generally include: (1) the location and position of the condition, *McClurg*, 300 So. 3d at 1120; (2) its size and dimensions, *see id.*; *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 744–45 (Ala. 2009); (3) its color and whether it contrasted with that of its surroundings, *see McClurg*, 300 So. 3d at 1120; *Sheikh v. Lakeshore Found.*, 64 So. 3d 1055, 1060 (Ala. Civ. App. 2010); *Paige v. Wal-Mart Stores, Inc.*, 638 So. 2d 4 (Ala. Civ. App. 1994); (4) lighting conditions, *see Ex parte Kraatz*, 775 So. 2d at 804; *Woodward v. Health Care Auth. of City of Huntsville*, 727 So. 2d 814, 817–18 (Ala. Civ. App. 1998); (5) whether the condition was obscured from view by other objects, *see Owens*, 352 So. 3d at 1175 & n. 4; *Dolgencorp, Inc.,* 28 So. 3d at 744; (6) whether a person might reasonably expect to encounter that hazard or similar ones in the area, *see Shaw v. City of Lipscomb*, 380 So. 2d 812, 814-15 (Ala. 1980); *Sheikh*, 64 So. 3d at 1060–61; *Gray v. Mobile Greyhound Park, Ltd.*, 370 So. 2d 1384, 1388–89 (Ala. 1979); and (7) whether a reasonable person might be expected to be distracted or have their attention diverted by other items or potential hazards in the area, *see McClurg*, 300 So. 3d at 1119-20; *Williams v. Bruno's, Inc.*, 632 So. 2d 19, 22 (Ala. 1993); *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 462-63 (Ala. 1993).

A review of the surveillance video supports Plaintiff's claim that her foot slid out from under her after she had taken a few steps beyond the vestibule onto the light-colored flooring of the store. (Stanley Cam Video and Vestibule Video at 6:13:48 to 6:13:53 PM).  Plaintiff alleges

that what caused her foot to slide, and her ensuing fall, was her stepping on the broken piece of tile on the floor. The record contains several photos of the allegedly offending object, which, along with Plaintiff's testimony, show that it was relatively small and compact, only about two inches by three inches, with an irregular, trapezoidal shape. (*See* Docs. 32-2, 32-3; Pl. Depo. at 111-12). Those photos further show that the tile was a dark brown on one side, like the vestibule flooring, but a somewhat lighter color on its reverse, potentially due to the presence of grout or adhesive. (*Compare* Doc. 32-3 and Docs. 32-2 at 11-12 (all showing the darker brown side) *with* Docs. 32-2 at 13-15 (showing the other, lighter side); *see also* Culpepper Depo. at 51-54; Doc. 32-7, Deposition of Wal-Mart's 30(b)(6) Corporate Representative, Tracy Smelcer ("Smelcer Depo.") at 42-43).

The parties clash, however, on which side of the piece of tile was facing up when Plaintiff allegedly stepped on it. (*See* Dft. Brief at 23-24; Pl. Brief at 20-21; Doc. 33 ("Dft. Reply") at 9-12). Wal-Mart argues that the darker brown side was facing up, which is how Plaintiff acknowledges it to have been laying when she first saw it by her foot on the floor after she fell. (*See* Pl. Depo. at 107-108). Plaintiff, on the other hand, claims that the surveillance video would allow a jury to find that the piece of tile was "flipped over" on its lighter side when she stepped on it. (*See* Pl. Brief at 20-21). As the parties recognize, if the darker side were facing up, that would have presented a somewhat greater color contrast to the background of the lighter beige tile flooring of the main store. However, this dispute need not be resolved at this time. Even assuming *arguendo* that the broken piece of tile was dark side up, as Wal-Mart argues, that would not establish that the hazard was open and obvious as a matter of law given the other surrounding circumstances, as further explained below. *See, e.g., Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1192-95 (Ala. 2002) (roll of plastic garment bags that was "either white or turquoise" left

in aisle of clothing store was not "open and obvious" as a matter of law).  For starters, both parties agree that the broken piece of tile is, at the very least, not easily seen on the floor before Plaintiff's fall in either of the two relevant surveillance videos.  (*See* Vestibule Video and Stanley Cam Video at 6:13:45 to 6:13:55 PM).  That is, Plaintiff interprets the videos as showing that, in the period before Plaintiff fell, the piece of tile is "barely visible" on the floor.  (Pl. Brief at 20-21).  Indeed, Wal-Mart goes so far as to insist that the piece of tile is *not visible at all* on the video during that time.  (Dft. Brief at 7-8).  That argument, of course, tends to substantially undercut Wal-Mart's simultaneous claim that the very same piece of tile was so open and obvious a hazard that any reasonable person would have seen and avoided it in the exercise of ordinary care.  (*See* Smelcer Depo. at 73-74 (when asked to explain the basis of Wal-Mart's claim that the piece of tile was open and obvious, Wal-Mart's corporate representative offered that customers have a responsibility to be aware of their surroundings but acknowledged that she did not see any object on the floor at the time of Plaintiff's fall on the surveillance video).

Nevertheless, Wal-Mart presses on undaunted, arguing that  the post-accident video and photographs support that the piece of tile was "easily distinguishable … as its dark color contrasts with the surrounding light-colored tile floor."   (Pl. Brief at 7-8 (*citing* Store Entrance Video at 6:27:49 to 6:28:34 PM; Doc. 32-4)).  Wal-Mart thus contends that the record establishes the "plain visibility of the tile piece" and that "Plaintiff has failed to present any evidence that [it] was not perceivable to her by the use of ordinary care."  (Pl. Brief at 24).  However, even if it might be assumed the tile piece on the floor might have been "visible" or "perceivable" to Plaintiff had she been looking for it, "a dangerous condition in a walkway is not open and obvious merely because a plaintiff could have seen it if she were looking at the walkway."  *Hunter v. Durr Sys., Inc.*, 2007 WL 1215075, at *5 (M.D. Ala. Apr. 24, 2007); *see also Denmark*, 844 So. 3d at 1195 (testimony

that the plaintiff "*could* have seen the roll of bags under certain circumstances" did not show that the hazard was open and obvious as a matter of law (emphasis original)); *Harris v. Flagstar Enterprises, Inc.*, 685 So. 2d 760, 761-63 (Ala. Civ. App. 1996) (jury question presented on whether sand and cigarette butts in defendant's parking lot constituted an open and obvious hazard, despite the plaintiff's admission "that she did not look down before stepping onto the ground and that she probably would have noticed the sand and cigarette butts had she looked"); *Lawson*, 2019 WL 3790214, at *11 ("[A] broad statement that a hazard is 'open and obvious' just because individuals should have been able to see it and because it was 'readily visible' is inappropriate and fails to account for the fact-intensive analysis of whether 'an objectively reasonable person in [the plaintiff's] circumstances would have noticed and appreciated the dangerousness of [the hazard].'" (*citing Johnson v. Logan's Roadhouse, Inc.*, 2016 WL 4585927, at *4 (N.D. Ala. Sept. 2, 2016)).

While the scope of a storekeeper's duty is informed by a presumption that invitees must exercise reasonable care to avoid open and obvious hazards, Alabama courts have stated that a "person walking through a store is justified in assuming that the floor is level and smooth," *Shaw v. City of Lipscomb*, 380 So. 2d 812, 815 (Ala. 1980) (*quoting Brynes v. National Cas. Co.*, 45 So. 2d 408, 410 (La. App. 1950)), and that the storekeeper has exercised reasonable care to keep the floor free of debris and foreign substances. *See Winn-Dixie Montgomery, Inc. v. Rowell*, 288 So. 2d 785, 791 (Ala. Civ. App. 1973) (affirming trial court's refusal to give defendant's proposed jury instruction that the plaintiff "did not have the right to assume that the floor of defendant's store was clear of any foreign substance on the surface of same"). Indeed, the Alabama Supreme Court stated long ago that "[o]ne acting upon an invitation, express or implied, has the right to presume … that the premises … are kept at least reasonably safe and he is not required to be careful to keep on the lookout for pitfalls." *Alabama Great S. R. Co. v. Godfrey*, 47 So. 185, 190 (Ala.

1908); *see also Foodtown Stores, Inc. v. Patterson*, 213 So. 2d 211, 215 (Ala. 1968) ("To hold as a matter of law that a customer has to spend some of his time looking for beans and other vegetable matter on the floor surrounding the counter and area, where and while the customer was shopping, would place a higher duty upon the customer than the law requires."); *Louis Pizitz Dry Goods Co. v. Harris*, 118 So. 2d 727, 731 (Ala. 1959) (pedestrian in front of store had no duty to look out for cleaning solution on sidewalk without notice that there was some occasion to do so); *Atkinson v. Dean*, 73 So. 479, 482 (Ala. 1916) ("There is no duty on a passenger to look out for suit cases in the aisle of a [railroad] car; he has a right to presume that the aisle is clear of such obstructions."); Restatement (Second) of Torts ("Restatement") § 343 cmt. d (1965) ("An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein.  Therefore, an invitee is not required to be on the alert to discover defects which, if he were a mere licensee, entitled to expect nothing but notice of known defects, he might be negligent in not discovering."); , Restatement § 343 cmt. e ("[O]ne entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors.").  Thus, courts do not generally presume that an invitee must be constantly looking down in a continuous scan of the floor for defects and hazards.  *See Foodtown Stores, Inc., supra; Lawson*, 2019 WL 3790214, at *12 (noting a distinction in Alabama caselaw whereby summary judgment is often granted to the defendant based on the open and obvious nature of the hazard where the plaintiff is "not looking where they are going" but not where the plaintiff was just "not looking down"); 62A Am. Jur. 2d Premises Liability § 687 ("The law does not demand that an invitee look continuously at the floor for any possible defects or to make a specific

observation of the floor before taking each step, since the invitee is entitled to assume that the owner or occupier of the premises has exercised reasonable care to make the premises safe for the invitee and continues to exercise such care while the invitee remains on the premises." (footnotes omitted)); *accord Smith v. Walmart Stores East, LP*, 2022 WL 320839, at *4 (11th Cir. Feb. 3, 2022) ("The Supreme Court of Georgia has rejected any requirement that an invitee look continuously at the floor for defects, holding that the invitee is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe." (*quoting Davis v. Bruno's Supermarkets, Inc.*, 587 S.E.2d 279, 282 (Ga. Ct. App. 2003)) (applying Georgia law)).

Here, the small and compact size of the broken piece of tile, along with its undisputed lack of clear visibility on the surveillance videos before the fall, suggest that it was not an open and obvious hazard as a matter of law.  *See McClure v. Target Corp.*, 2014 WL 7204950, at *6 (E.D. Mich. Dec. 17, 2014) (finding a genuine dispute as to whether an alleged grease trail on the Target floor was open and obvious where video surveillance showed no visible grease trail or other substance noticeable "upon casual inspection"); *Wal-Mart Stores Texas, LLC v. Autrey*, 2021 WL 1216890, at *4-5 (Tex. App. Apr. 1, 2021) (when spill was not visible on color video of slip and fall incident, it was not open and obvious as a matter of law).  Irrespective of which side of the piece of tile might have been facing up, both the tile and the underlying beige flooring would have all been neutral tones, rather than the hazard being a high visibility contrasting color like yellow or orange.  *Cf. Paige*, 638 So. 2d at 6 (orange extension cord an off-white store floor held to be "open and obvious" as a matter of law).  Added to that, the evidence supports that the area where Plaintiff slipped, just inside the main store entry, is not a place where one would typically expect to encounter such a small, hard, slippery object on the floor.  (*See* Smelcer Depo. at 57-58 (current manager of the store recognizing that the vestibule and entry are not considered "high" slip, trip,

and fall areas); *Denmark*, 844 So. 2d at 1195 (roll of plastic bags left in store aisle not open and obvious as a matter of law where "there was no evidence indicating that [the plaintiff] knew the roll existed or that she expected it to be in the area in which she was shopping.").  Finally, the Wal-Mart employees acknowledge that the front entrance is a "high traffic area" (Culpepper Depo. at 69; Smelcer Depo. at 54).  The video likewise shows customers and employees regularly coming and going through the area, often while maneuvering shopping carts.  Thus, a customer's attention might be reasonably diverted away from small objects at floor level.  *See McClurg*, 300 So. 3d at 1119-20; *Williams*, 632 So. 2d at 22; *Harding*, 628 So. 2d at 462-63; *Thompson v. RK Holdings, LLP*, 2023 WL 7711259, at *7 n. 4 (N.D. Ala. Nov. 15, 2023).  Indeed, the videos show that just as Plaintiff crossed from the vestibule onto the lighter store flooring, another customer can be seen pushing a shopping cart within Plaintiff's line of sight, potentially heading towards her but then veering off further to Plaintiff's right to an adjacent exit.  (*See* Vestibule Video and Stanley Cam Video at 6:13:45 to 6:13:55 PM).

The undersigned concludes that the totality of the surrounding circumstances precludes that the broken piece of tile might be an open and obvious hazard as a matter of law.  *See Denmark*, *supra* (roll of plastic garment bags eight inches in diameter and about two and a half to three feet in length, left in the aisle of clothing store was not "open and obvious" as a matter of law); *Harding*, 628 So. 2d at 462-63 (box of paint cans protruding six inches into lumber store aisle not open and obvious as a matter of law where plaintiff acknowledged seeing many other boxes in center of aisle but denied seeing box of paint cans protruding at side of aisle); *Pittman v. Hangout in Gulf Shores, LLC*, 293 So. 3d 937, 943-44 (Ala. Civ. App. 2019) (single step down in restaurant held not open and obvious as a matter of law even though painted yellow where the plaintiff reasonably might not have noticed the step because of lighting conditions and other distractions); *Ryles v.*

*Wal-Mart Stores East L.P.*, 2004 WL 3711972, at *1, 5 (M.D. Ala. Dec. 16, 2004) (holding that a "brown box[ ]" that was "slightly larger than a shoe box" and was "resting on the white floor" of Wal-Mart store was not "open and obvious" as a matter of law); *see also F. W. Woolworth Co. v. Bradbury*, 140 So. 2d 824, 825-828 (Ala. 1962) (plaintiff fell in store vestibule where she had seen peanuts, popcorn, and candy wrappers on the floor and claimed to have slid on something, which she thought was peanuts; rejecting defendant's argument that it was entitled to judgment as a matter of law on the ground "that plaintiff put herself in the way of an open and obvious danger").

Wal-Mart cites a host of cases that it contends are analogous and establish that the piece of tile was open and obvious as a matter of law.  (Dft. Brief at 19-24).  A closer examination of these cases, however, reveal that they involved very different hazards and circumstances from our case. For example, in one of Wal-Mart's cited cases, the plaintiff had subjective knowledge of the hazard.  *See Ex parte Neese*, 819 So. 2d 584, 590-91 (Ala. 2001) (upside-down doormat left out in the rain where plaintiff had repeatedly visited defendant's home, knew of the doormat, had safely stepped over it three times that day, and may have stepped on it while entering home).  In two others, the obstacles were simply substantially larger and more conspicuous.  *See Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 744-45 (Ala. 2009) (cases of merchandise—each "at least 12–13 inches high and 15–16 inches wide"—in store aisles and were not obscured from view); *Browder v. Food Giant, Inc.*, 854 So. 2d 594, 596-598 (Ala. Civ. App. 2002) ("hole" or "depression" in grocery store parking lot; plaintiff and her husband both testified that the plaintiff "was not watching where she was going" and red dirt of depression where plaintiff fell "contrast[ed] sharply" with black asphalt of the lot).  In two other cases, the hazards more sharply contrasted with their surroundings and were, in addition, either the sort of hazard that a reasonable person would have expected to find in the area, *see Sheikh v. Lakeshore Found.*, 64 So. 3d 1055, 1060-62 (Ala. Civ. App. 2010)

(cables stretched across floor of exercise facility contrasted with the background floor and a reasonable person utilizing the facility would be on notice to be on the lookout for potential small hazards below eye level, including dumbbells, towels, weights, gym bags, mats, benches, electric-fan cords, water bottles, etc.), or extended to near eye level, *see Paige*, 638 So. 2d at 6 (orange extension cord laying on white store flooring, plugged into an outlet at eye level on vertical support pole at Wal-Mart store).  In Wal-Mart's final cited case, *Melton v. Kroger*, 2019 WL 3208367, at *8 (M.D. Ala. July 16, 2019), the district court held that the plaintiff had failed to present evidence that she had, in fact, fallen over electrical outlet cover in store aisle floor or that any portion of the cover was "sticking up" or otherwise presented an unreasonable hazard.  It was only after doing so that  the court additionally held, without ever explaining how the condition was, in fact, hazardous and without citing any purportedly analogous case, that the outlet was open and obvious because it had a "shiny, gold metal cover" six inches in diameter and was unobstructed from view in the middle of aisle on gray cement floor.  *Id.*  ; None of these cases present circumstances like those of the present case.  Wal-Mart is not entitled to summary judgment based on its open-and-obvious defense.

### 2.  The Notice Requirement and Its Exceptions

Wal-Mart also argues that the evidence does not support that it acted negligently, *i.e.*, breached the duty care it owed to its invitee customers.  Because a landowner's liability rests upon its superior knowledge of hazards on the premises, to establish a breach of duty owed, a plaintiff generally must show that the landowner either: (1) had actual notice of the hazard that allegedly caused the injury or (2) had constructive notice of it, *i.e.*, the landowner should have discovered it in the exercise of reasonable care.  *See Edwards v. Intergraph Services Co.*, 4 So. 3d 495, 502 (Ala. 2008); *Denmark*, 844 So. 2d at 1192; *Goggans, supra*; *Rew v. Target Corp.*, 2019 WL

13223713, at *6 (N.D. Ala. Dec. 2, 2019). However, there are exceptions to this rule. *See Edwards*, 4 So. 3d at 503. One is that an invitee need not make a prima facie showing that the landowner had actual or constructive notice when the owner or its employees negligently created the condition. *Id.; Rew*, 2019 WL 13223713, at *7. Another is when the landowner has failed to reasonably inspect or maintain the premises as to discover and remedy the defective condition. *Id.* Finally, a plaintiff need not produce evidence of notice "in cases where the alleged defect is part of the premises." *Byrne*, 2023 WL 3558245, at *6 (*quoting Mims v. Jack's Restaurant*, 565 So. 2d 609, 610 (Ala. 1990)); *Goggans*, 2021 WL 5298900, at *2; *see also Edwards*, 4 So. 3d at 502 (suggesting this exception is a species of the "failure-to-inspect-or-maintain" cases)); *Johnson v. Sears Roebuck & Co.*, 2018 WL 2463119, at *2 (N.D. Ala. June 1, 2018) (listing the "part of the premises," "created the hazardous condition," and "failure to inspect and maintain" cases as representing three exceptions to the general rule requiring prima facie proof of the defendant's actual or constructive knowledge, *citing Burlington Coat Factory of Ala., LLC v. Butler*, 156 So. 3d 963, 969 (Ala. Civ. App. 2014)).

On this front, Wal-Mart claims that it is entitled to summary judgment on the basis that there is, Wal-Mart says, no evidence that it had actual or constructive notice of the piece of tile on the floor sufficiently in advance of Plaintiff's fall to reasonably support an inference of negligence. (Dft. Brief at 4-14). Plaintiff not only denies this (*see* Pl. Brief at 11, 14-16) but he also argues that the condition was a part of Wal-Mart's premises (*id.* at 12), that its employees created the hazard (*id.* at 12-14), and that Wal-Mart was delinquent in failing to discover the piece of tile. (*Id.* at 16-18). In reply, Wal-Mart asserts that the broken piece of tile was not "a part of its premises" in this setting. (Dft. Reply at 2). Wal-Mart also denies that the evidence supports that its employees created the condition (*id.* at 2-5), that the piece of tile was on the floor long enough to impute

constructive notice (*id.* at 5-6), or that Wal-Mart was otherwise delinquent in failing to discover the hazard.  (*Id.* at 6-8).

It is in the above arguments regarding the notice requirement and its exceptions that the parties' conflicting interpretations of the surveillance video footage come fully to the forefront. That is, Plaintiff maintains that a jury could make certain findings favorable to her case based on the video recordings, particularly when they are considered in conjunction with the other evidence, including the photographs, store incident report, and deposition testimony.  Wal-Mart conversely argues that Plaintiff claims to see things on the videos that simply either are not there or are at least not clear enough to discerned as what Plaintiff suggests.  Wal-Mart further insists that the other evidence in the record cannot fill the inferential gaps.  Wal-Mart thus maintains that Plaintiff's arguments are founded upon impermissible speculation and conjecture that cannot stave off summary judgment.  *See, e.g., Zhanadova v. Wal-Mart Stores East, LP*, 2023 WL 6534188, at *4 (11th Cir. Oct. 6, 2023) (holding that plaintiff's contention that individuals in store surveillance video were Wal-Mart employees was not a reasonable inference because it was "based solely on speculation and conjecture" and therefore could not create a genuine dispute at summary judgment).  The undersigned considers that the best way to analyze these factual disputes, of which there are many, is to: (1) set out Plaintiff's narrative theories on what the store videos and other evidence support, (2) identify whether and how Wal-Mart dispute those theories, and (3) resolve the disputes as necessary by setting out what inferences the undersigned concludes a jury might reasonably draw from the evidence.

To that end, Plaintiff's timeline of alleged events begins some 48 minutes before she fell. (*See* Pl. Brief at 4-7).  She says that at or about 5:25:58 p.m., as shown by the time stamp display on the videos, a "vestibule floor tile" sitting "just on the edge of the vestibule, where it transitions

into the store's main/lighter-color floor," "was in disrepair" and "first gets kicked up." (*Id.* at 4, ¶ 5(a) & n. 2 (*citing* Vestibule Video and Stanley Cam Video; Culpepper Depo. at 27-28)).  Plaintiff asserts that, about five minutes later, at or about 5:31:10 p.m., "pieces of the busted floor tile get kicked up by Wal-Mart employee James Terrell." (Pl. Brief at 4, ¶ 5(b) & n. 3 (*citing* Vestibule Video and Stanley Cam Video; Culpepper Depo. at 29-30).  Plaintiff also describes this event as Terrell "walk[ing] over the busted tile" and "kicking up and dislodging the broken pieces." (*Id.* at 13-14 & n. 28).  According to Plaintiff, a little less than a half-hour later, at or about 5:57:03 p.m., a "piece of the busted floor tile gets dragged into the main store floor" by two Wal-Mart employees pushing shopping carts through the vestibule, over the transition strip, and into the main store area. (*Id.* at 4, ¶ 5(c) & n. 4 (*citing* Vestibule Video and Stanley Cam Video; Culpepper Depo. at 29-30; *see also id.* at 14 & n. 29)).

Meanwhile, about five minutes after that, at 6:02:42 p.m., a customer approaches Michael in the vestibule and advises that he wants to use a "Coinstar" change machine located behind where she was standing. (Vestibule Video and Deli Side Video at 6:02:42 to 6:02:53 p.m.; Michael Depo. at 122).  Michael obliges.  She steps away from the machine, taking her box of masks with her, and walks to the other, "main store" side of the A-frame sign, taking up a position standing at the transition strip, at about 6:02:55 p.m.  (*See* Vestibule Video).  Michael remains there as the customer continues to use the coin machine until finishing and walking away at about 6:11:30 p.m. (Vestibule Video and Deli Side Video at 6:02:55 to 6:11:37 p.m.).  Seeing that the customer has left, right at 6:12 p.m., Michael walks back to the near, "vestibule side" of the A-frame sign and retakes her original position in front of the coin machine.  (Vestibule Video at 6:12:00 to 6:12:08 p.m.).  Plaintiff asserts that, during the period of more than nine minutes in which Michael was

standing at the transition strip, on the far side of the A-frame sign, she was "within roughly five feet of the broken tile with nothing to obstruct her vision." (Pl. Brief at 5, ¶ 5(d) & n. 5).

We now come to Plaintiff's slip and fall itself. She can be seen first entering the store and walking into the vestibule at 6:13:43 p.m., whereupon she walks past Michael and crosses over the transition strip. (Vestibule Video and Deli Side Video). At 6:13:51 p.m., with her third step onto the light-colored tiles of the main store, Plaintiff's left foot slides out from under her. (Vestibule Video and Stanley Cam Video). Plaintiff asserts that her foot slid because she stepped on a broken piece of tile. (Pl. Brief at 5, ¶ 5(f), & n. 7). In particular, she claims that she stepped on a piece of tile represented on the videos by a dark spot that first appeared at about the 5:57 p.m. mark, when the two Wal-Mart employees pushing shopping carts allegedly dragged it onto the main store area floor. Plaintiff further asserts that this same piece of tile is visible again right after she falls, as a dark spot on the floor near her foot, on the Stanley Cam Video at 6:13:54 p.m. (*Id.* at 5-6, ¶ 5(g), & n. 8).

Plaintiff also claims that several events allegedly occurring after her fall are depicted on the video footage and support her case. First, she asserts that the recordings show Wal-Mart employee Terrell, after having come to the scene, walking up to the broken vestibule tile at the transition strip at 6:15:15 p.m., and "kick[ing] additional broken pieces of tile out of the entryway." (Pl. Brief at 6, ¶ 5(h), & n. 8 (*citing* Vestibule Video and Stanley Cam video; Terrell Depo. at 18-19)). A little more than ten minutes later, both sides acknowledge the video as showing another Wal-Mart employee, Ronald Culpepper, picking up the subject broken piece of tile from the floor and shortly thereafter putting it back down and photographing it for his store incident report. (*See id.*, at 6, ¶¶ 5(i), (j), & nn. 9 & 10 (*citing* Stanley Cam Video at 6:26:11 p.m. and 6:27:49 p.m.); Dft. Brief at 7 (*citing* Stanley Cam Video at 6:27:49 to 6:28:34 p.m.; Culpepper Depo. at 25-26,

22

51-52; *see also* Doc. 25-4; Doc. 32-2).  Plaintiff states that she also took a photo of the subject tile sometime after she had been helped off the floor and into a chair, which had occurred at about 6:17:30 p.m.  (Pl. Brief at 6, ¶ 5(j) & n. 11 (*citing* Pl. Depo. at 101-102); *see also* Stanley Cam Video and Vestibule Video).  Plaintiff has included that photograph in the record as Doc. 32-3.  Finally, Plaintiff contends that, at or about 6:50:31 p.m., a relative of hers, whom she had summoned to the store after she fell, can be seen standing on the white tile of the store taking a photo of the broken brown tile at the transition strip.  (Pl. Brief at 7, ¶ 5(*l*) & n. 13 (*citing* Vestibule Video and Stanley Cam Video; Pl. Depo. at 107).  Plaintiff's evidentiary submission includes what she contends is that photo.  (*See* Doc. 32-4).

Defendant sharply disputes Plaintiff's claims regarding what inferences might be supported by the evidence, particularly by the video footage.  Broadly speaking, Wal-Mart's view is that the "surveillance footage shows the subject dislodged tile piece" upon which Plaintiff claims to have slipped "was not visible on the floor anytime prior to the subject incident."  (Dft. Brief at 7).  Wal-Mart thus asserts that Plaintiff has failed to present substantial evidence "as to how long the dislodged tile piece had been located on the floor" or that it "had been located on the floor for a sufficient amount of time to impute knowledge of its presence to Wal-Mart."  (*Id.* at 12-13; *see also* Dft. Reply at 5).  Wal-Mart further disputes Plaintiff's theories that the record would allow a finding that Wal-Mart is presumed to have had notice of the broken piece of tile on the floor on the basis: (1) that that Wal-Mart employees created the condition (*see* Dft. Reply at 2-5) or (2) that Wal-Mart was delinquent in discovering the broken tile because Plaintiff not, Wal-Mart says, presented substantial evidence that Wal-Mart failed to perform reasonable inspections or maintenance in vestibule area.  (*Id.* at 7-8).  Wal-Mart specifically denies, for example, that its employee James Terrell "kicked up" a broken vestibule tile at the transition strip at about the 5:31

p.m. mark of the video and thereby created the hazard that Plaintiff claims caused her to slip.  (*Id.* at 4).  "In fact," Wal-Mart posits, "Plaintiff has presented no substantial evidence that the subject tile piece became dislodged any time prior to the Plaintiff walking through the vestibule and potentially dislodging the tile herself."  (*Id.* at 4-5).

Wal-Mart does not appear to challenge, however, that a jury could find that the object that Plaintiff claims she slipped on was a piece of tile that had broken off from a cracked vestibule tile located next to and in the middle of the transition strip.  But even if Wal-Mart does not formally concede that point, the undersigned concludes that the record contains an ample basis from which a jury could so find.  There are multiple photos of the subject tile piece and a photo of the broken vestibule tile at the transition strip, all taken shortly after the accident.  Those photos show that the subject piece of tile appears to be broken, irregularly shaped, and the same brown color and apparent general texture as tiles of the nearby vestibule flooring.   Indeed, both Michael and Culpepper acknowledged that the broken piece of tile was brown like the vestibule tiles.  (*See* Pl. Depo. at 107, 112-14, 115-17, 137-38; Michael Depo. at 34-35, 123-24, 132; Culpepper Depo. at 52-53; *see also* Smelcer Depo. at 41 (demurring when asked if Wal-Mart had any basis to dispute Plaintiff's claim that the broken piece of tile came from the cracked tile in the vestibule).  Michael also acknowledges having noticed prior to Plaintiff's fall that the vestibule tile at the transition strip had a single "line crack" diagonally across it (Michael Depo. at 39-41, 124-26, 128).  That same tile was observed after the incident, by not only Plaintiff but also by Wal-Mart employees Michael, Terrell, and Culpepper, to have been severely cracked, with broken and missing material, just a few feet from where Plaintiff fell and says she found the subject broken tile piece.

The undersigned also rejects Wal-Mart's assertion that a jury could not reasonably determine either: (1) that Wal-Mart employees created the hazard or (2) how and when the broken

piece of tile came to be on the floor where Plaintiff fell.  It is true that the surveillance video is too grainy to see exactly what Plaintiff slipped on.  However, "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it.  The sum of an evidentiary presentation may well be greater than its constituent parts."  *Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987).  Thus, the question is whether the record as a whole might give rise to reasonable inferences that Plaintiff stepped on a piece of tile, where it might have come from, and how long it might have been on the floor.  As further explained below, the undersigned ultimately concludes that a jury could reasonably make findings consistent with the material elements of Plaintiff's proposed narrative: namely, that a piece of the cracked vestibule tile by the transition strip broke free and was dragged by a Wal-Mart employee pushing a shopping cart through the vestibule at about 5:57 p.m. to the location on the white flooring of the main store area where Plaintiff slipped on it at just before 6:14 p.m.  Likewise, a jury could find in this scenario that Wal-Mart employee Susan Michael was standing for over nine minutes just a few feet from the piece of tile on the floor with an unobstructed view of it, but she failed to discover or remedy the hazard.

First, the parties agree that the Vestibule Video shows an individual, assumed be a customer, walking from the main store area, over the middle of the transition strip, and into the vestibule at about 5:25 p.m., at which point a clearly discernible dark spot appears on the floor just on the "vestibule side" on the transition strip.  Wal-Mart supervisor Ronald Culpepper acknowledges seeing this on the footage, although he denies being able to tell what the spot is, suggesting it might perhaps be a "shoe print."  (*See* Culpepper Depo. at 27-29).  The parties also do not dispute that this same dark spot quickly disappears from the video at about 6:31 p.m., when Wal-Mart employee James Terrell walks over the transition strip from the main store area to address Michael.  Plaintiff characterizes this footage from the Vestibule Video as establishing that

25

the piece of tile that she later slips on first gets "kicked up" by the customer and then gets further "kicked up" by Terrell (Pl. Brief at 5, ¶¶ 5(a), (b)), thereby creating the hazardous condition that Wal-Mart failed to remedy before Plaintiff fell.[8]  However, all the evidence plainly shows that Plaintiff did not slip or trip *at the transition strip*; instead, she fell several steps *past* it, on the main store flooring.  Further, Culpepper does not admit to seeing anything like a piece of tile being "kicked up" at any point on the video.  The undersigned can also see the dark spot become visible and then disappear on the recording as described above.  But again, the video images are simply too grainy to determine what the spot is or just what the floor might have truly looked like at that time.  Further, the only witness testimony on that matter comes from Michael who repeatedly denies having seen any debris or other hazardous condition on the floor at any time Plaintiff fell.[9] (Michael Depo. at 34-35, 38-39, 59, 117-18, 127-28, 135-36).

That said, the undersigned agrees with Plaintiff that the Vestibule Video and the Stanley Cam Video can be reasonably viewed as showing Plaintiff's foot slipping when she stepped on *something*, represented by a visible spot that is slightly darker than the light-colored flooring of the main store.  As Plaintiff concedes, that spot is only "barely visible." (Pl. Brief at 21).  However, the undersigned can see it on the video, and Michael and Culpepper acknowledged being able to

---

[8] Wal-Mart argues that Terrell was not acting as its employee, citing Culpepper's testimony that he did not "believe [Terrell] was clocked in at [this time]" and might have been in the store shopping as a customer.  (*See* Dft. Reply at 4 & n. 1 (citing Culpepper Depo. at 30)).  Wal-Mart thus contends that Terrell's actions cannot be imputed to Wal-Mart for purposes of establishing that Wal-Mart created the hazardous condition.  (*See id.*).  Terrell testified, however, he was on the clock at this time.  (Terrell Depo. at 15-16).

[9] While Michael acknowledges that she had seen a "line crack" in the vestibule tile at the transition strip sometime prior to Plaintiff's fall, at no time before that incident, she says, did she see any part of the tile raised up, missing material, or otherwise presenting a slip or trip hazard. (Michael Depo. at 39-41, 124-26, 128).

see it as well.  (Michael Depo. at 51-52, 83-84; Culpepper Depo. at 35-36).  Thus, the undersigned concludes a jury could do likewise.

The undersigned further agrees with Plaintiff that the video recordings would allow a finding that this spot first becomes visible when two Wal-Mart employees come through the vestibule with shopping carts and appear to drag it to the exact location on the floor where Plaintiff later steps on it and falls.  That is, the spot first appears at about 5:57 p.m., right as two individuals pushed shopping cars through the vestibule, passing over the middle of the transition strip, and into the main store area.  Both were wearing dark vests with a Wal-Mart logo on the back, reasonably suggesting they were store employees.  (*See also* Michael Depo. at 48-50); *see McCombs v. Bruno's, Inc.*, 667 So. 2d 710, 713 (Ala. 1995) (fact that individuals were wearing "store smocks" indicated they were employees of defendant); *Hodson v. MSC Cruises, S.A.*, 2021 WL 3639752, at *12 (S.D. Fla. Aug. 2, 2021) (plaintiff's testimony that an otherwise unidentified individual was wearing a uniform and name tag associated with the defendant cruise line was sufficient to support that the individual was defendant's employee), *report and recommendation adopted*, 2021 WL 3634809 (S.D. Fla. Aug. 16, 2021).  Further, the undersigned agrees with Plaintiff that a jury could find that the spot remained in that location until she stepped on it and fell, whereupon it appears to move immediately to another spot on the floor right by Plaintiff's foot.

Again, the video images alone are not clear enough to permit one reasonably to ascertain just what this discolored spot on the video is.  However, when the video is considered along with the testimony of Plaintiff and other witnesses, the photographic evidence, and the incident report, the record supports a reasonable inference that the spot on the video is, in fact, a broken piece of vestibule tile that was dragged into the main store area by one of the two vest-wearing Wal-Mart

employees pushing the shopping carts. *See Gonzalez v. Wal-Mart Stores, Inc.*, 2023 WL 4841921, at *2 (11th Cir. July 28, 2023) (holding that jury could find that a "white-ish spot or smudge" on appearing on store video footage was liquid substance that plaintiff claimed to have slipped on, based on the "location and persistence" of the smudge on the video, which was in "the *exact* same spot that Gonzalez later stepped on when he slipped" (emphasis original)); *see also Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1172 (11th Cir. 2023) (although store video did not show grape on floor that the plaintiff claimed to have stepped on or how it got there, the plaintiff's testimony that she slipped on a grape and the fact that the video did not otherwise show anyone dropping a grape on the floor at any time more than an hour before the plaintiff's fall was sufficient from which to infer that the grape had been on the floor long enough to demonstrate Wal-Mart's constructive knowledge of its presence); *Stutler v. Coca-Cola Beverages Fla., LLC*, 2023 WL 4703301, at *2–3 (11th Cir. July 24, 2023) (although surveillance video did not itself show liquid leaking from defendant's beverage cooler in Target store checkout line, other circumstantial evidence supported a reasonable inference that cooler had leaked, including that the video showed the plaintiff slipping in front of the cooler on a puddle of water, photograph indicated liquid was coming from cooler, store incident report mentioned that the floor was "wet" from a "cooler leak," and there was no other likely explanation for how the water ended up beneath and adjacent to the cooler). The undersigned concludes that a Wal-Mart store employee might be found to have thus created the hazard. Wal-Mart does not argue that a jury could not deem such employee's conduct to be negligence attributable to Wal-Mart. Therefore, Plaintiff need not otherwise prove that Wal-Mart had actual or constructive notice of the hazardous condition to avoid summary judgment.

Indeed, the record also gives rise to a jury question regarding whether Wal-Mart otherwise had constructive notice of the hazard and unreasonably failed to remedy it. As explained above,

the evidence supports that the broken piece of tile was on the main store area floor from about 5:57 p.m., when one of the vest-wearing Wal-Mart employees dragged it there with a shopping cart from the transition strip, until Plaintiff slipped on it and fell at  just before 6:14 p.m.  That is a period of just under 17 minutes.  The Alabama Supreme Court has cautioned that a "stop-watch" rule that considers only how long a foreign substance or hazard might have been on the floor is inappropriate in slip and fall cases because each one must be decided on its own facts.  *Ex parte Travis*, 414 So. 2d 956, 961 (Ala. 1982) (*citing Foodtown Stores, Inc. v. Patterson*, 213 So. 2d 211, 216 (Ala. 1968)).  That said, the length of time in this case seems close to the boundary of where courts have allowed that a jury might infer a storekeeper's constructive knowledge of, and a negligent failure to correct, hazards on the floor.[10]  *See Hose v. Winn–Dixie Montgomery, Inc.*, 658 So.2d 403, 404 (Ala.1995) (five to ten minutes insufficient); *McCombs v. Bruno's, Inc.*, 667 So. 2d 710, 713 (Ala. 1995) (evidence that substance had been on the floor for "15 minutes or more" and that the store had been notified about the spill held sufficient); *Bruno's, Inc. v. Schad*, 628 So. 2d 934, 936 (Ala. Civ. App. 1993) (twenty or more minutes held sufficient).

But even assuming that timing alone might be insufficient to impute constructive notice to Wal-Mart, there is other evidence that would support such a finding.  Namely, the Alabama Supreme Court has recognized that the presence of a store employee in the immediate area where the plaintiff slipped and fell may, at least under certain circumstances, support a finding that the

---

[10] Interestingly, the Eleventh Circuit has opined in an unpublished and thus non-binding case, *see* 11th Cir. R. 36-2, that the quantum of evidence required to support a reasonable inference of a landowner's constructive knowledge of a hazard on the premises is a question of federal law, not one of substantive state law that must be applied in diversity.  *Goggans*, 2021 WL 5298900, at *2-4.  The undersigned concludes for the reasons explained in the text, however, that regardless of whether state law or federal law applies, the totality of the circumstances would allow a jury to find that Wal-Mart had notice of the hazard and negligently failed to correct it.

defendant had constructive knowledge of a hazardous condition.  *See Mills v. Bruno's, Inc.*, 641 So. 2d 777, 779 (Ala. 1994) ("Whether Bruno's had actual or constructive notice that the oil was on the floor is a genuine issue of material fact.  From the fact that there was a Bruno's employee stocking shelves nearby in the aisle when Mills slipped and fell, a jury could reasonably infer either that the employee was responsible for the spill or that he knew of the spill."); *Williams v. Bruno's Inc.*, 632 So. 2d 19, 21-22 (Ala. 1993) ("If [the plaintiff's] testimony is believed, i.e., if the facts are that the strips were on the floor and the strips caused his fall, then [the defendant] obviously had constructive notice, through their employee Light, who would or could have seen them during his four previous trips up and down the aisle."); *see also Couch v. Von Maur Stores, Inc.*, 2021 WL 4301587, at *3–4 (N.D. Ala. Sept. 21, 2021) (discussing *Mills*); *Wal-Mart Stores, Inc. v. Manning*, 788 So. 2d 116, 118 (Ala. 2000) (wherein the Alabama Supreme Court, applying Georgia law, indicated that "evidence that there was [an] employee of [the premises owner] in the immediate vicinity who could easily have noticed [the dangerous condition]" might support a finding that the defendant had notice of the condition (internal quotation marks and citation omitted)); *Smith*, 2022 WL 320839, at *3–4 (wherein the Eleventh Circuit held, applying Georgia law, that evidence that Wal-Mart employees were in the vicinity of the plaintiff's fall and had a reasonable opportunity to have discovered the hazard supported in inference of constructive knowledge); *but cf. Williams v. Wal–Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1320 (M.D. Ala. 2008) (stating that "there is no case law to support the argument that simply having employees in the vicinity provides evidence of negligence," albeit without citing affirmative authority or acknowledging *Mills* or *Williams v, Bruno's, Inc., supra*).

The surveillance videos support that Wal-Mart employee Susan Michael was standing in the vestibule area near the broken piece of tile for the entire time it might be found to have been

first deposited on the floor by another Wal-Mart employee at about 5:57 p.m. until Plaintiff slipped on it just before 6:14 p.m.  It is likewise undisputed that her job duties included keeping a lookout for and cleaning up debris and correcting safety hazards on the floor in the area by her station. (*See* Michael Depo. at 96-99, 112-13; Culpepper Depo. at 64-65; Smelcer Depo. at 16-17, 58, 71-72, 74-75).  The Vestibule Video further confirms that Michael was standing at the transition strip from just before 6:03 p.m. until 6:12 p.m., a period of over nine minutes, during which: (1) she would have been standing only a few feet away from the piece of tile on the floor, (2) with an unobstructed view of it, and (3) Michael appears to have been largely unoccupied with any other substantial tasks or duties.  While the presence of the piece of broken tile might not have been *obvious*, the video supports that it was, in fact, *visible* on floor, despite Michael's testimony that she did not see it.  Based on the totality of the circumstances, a jury could find that Michael reasonably should have discovered the piece of tile in the exercise of due care in the approximately nine minutes when she would have been standing a few feet from it.  That would impute constructive notice to Wal-Mart.  *See Mills; Williams; Smith, supra*; *see also Ryles*, 2004 WL 3711972, at *4 n. 5 (recognizing that the "behavior" of a customer "may be expected to be different from that of an employee," insofar as "it would be reasonable to expect [a customer] to be less vigilant about store standards and more conscious of the items for which [they are] shopping").  Wal-Mart is not entitled to summary judgment based on its theory that the evidence is insufficient to support that Wal-Mart's conduct was negligent.[11]

---

[11] Because the evidence supports that Wal-Mart employees negligently created and/or failed to discover and remedy the hazardous condition, it is unnecessary for the undersigned to consider Plaintiff's additional argument that the hazard was "a part of the premises."

### B.      Proximate Cause

Wal-Mart also seeks summary judgment based on Plaintiff's alleged inability to establish the element of proximate cause.  (Dft. Brief at 14-18).  Specifically, Wal-Mart concedes that Plaintiff suffered material injuries when she fell.  However, Wal-Mart insists that, even if the evidence might support that Wal-Mart negligently caused or allowed the broken piece of tile to be on the floor, as Plaintiff claims, her testimony and the other evidence offered to show that she fell because she did, in fact, step on that piece of tile, amounts to mere speculation.  The undersigned disagrees.

To recover in a premises-liability action based on a fall, a plaintiff must prove that her fall was caused by a defect or instrumentality on the defendant's premises.  *Logan v. Winn–Dixie Atlanta, Inc.*, 594 So. 2d 83, 84 (Ala. 1992).  Causation typically presents a question of fact for the jury, but it may be decided as a matter of law by the court if reasonable people must draw the same conclusion on the issue from the evidence.  *See Cowan v. J.C. Penney Co.*, 790 F.2d 1529, 1532 (11th Cir. 1986); *Durden v. Gaither*, 504 So. 2d 258, 259 (Ala. 1987).  Causation may not be established by speculation, conjecture, or guesswork.  See *Ervin v. Excel Properties, Inc.*, 831 So. 2d 38, 45 (Ala. Civ. App. 2001); *Highfield v. Grede II, LLC*, 2017 WL 5503714, at *4 (S.D. Ala. Nov. 16, 2017).  However, it is not necessary for a plaintiff "to prove the proximate cause of her fall by direct evidence"; rather such may be "completely established through circumstantial evidence."  *Harris*, 685 So. 2d at 762 (*citing Bell v. Colony Apartments*, 568 So. 2d 805, 810 (Ala. 1990)); *see also Folmar v. Montgomery Fair Co.*, 309 So. 2d 818, 821 (Ala. 1975) ("There is nothing wrong with a [slip-and-fall] case built around sufficient circumstantial evidence, provided the circumstances are proved and not merely presumed.").  "A fact is established by circumstantial evidence if it can be reasonably inferred from the facts and circumstances adduced."  *Harris*, 685

So. 2d at 762 (*quoting Bell*, 568 So. 2d at 810-11); *see also Highfield, supra*, at *7 ("A plaintiff's evidence is not speculative as long as it 'points to any one theory of causation, indicating a logical sequence of cause and effect, ... notwithstanding the existence of other plausible theories with or without support in the evidence.'" (*quoting Southern Ry. Co. v. Dickson*, 100 So. 665, 669 (Ala. 1924)).

As explained in the preceding section, the record would support findings that: (1) the cracked brown vestibule tile by the transition strip broke apart, (2) a Wal-Mart employee pushing a shopping cart dragged a broken piece of that tile a few feet onto the main store flooring, and (3) another Wal-Mart employee, Susan Michael, reasonably could have discovered and removed that piece of tile before Plaintiff slipped on it but did not.  Plaintiff testified staunchly that she "know[s] for certain" that she slipped on that broken piece of tile.  (Pl. Depo. at 105).  Wal-Mart argues, however, that, despite such insistence, Plaintiff's testimony cannot prove causation because, Wal-Mart posits, the "confident assertion of speculation does not transform it into probative evidence." (Dft. Brief at 16 (*quoting Rosson v. Lowe's Home Centers, LLC*, 2019 WL 1429172, at *4 (N.D. Ala. Mar. 29, 2019)).  Wal-Mart further argues that Plaintiff cannot prove causation because she admitted: (1) that she did not see anything on the floor until after she fell and (2) that she didn't perceive a feeling that her foot had stepped on something (Dft. Brief at 17-18 (*citing* Pl. Depo. at 110, 117-18)).  Wal-Mart also points out that Plaintiff did not "ever walk over the area containing the broken tile from which [she] believes the dislodged tile piece originated."  (Dft. Brief at 18).

Wal-Mart's arguments are unconvincing.  Taking its last point first, it is unclear why Wal-Mart thinks that it might matter whether Plaintiff walked directly over or upon the area by the transition strip from whence she believes the subject tile fragment broke free.  Plaintiff does not claim that she slipped there.  To the contrary, Plaintiff's testimony and the video evidence establish

unambiguously that she slipped after passing the transition strip and going a few steps onto the main store flooring. Nor does Plaintiff suggest that she might have herself tracked the broken piece of tile from the transition strip area to the spot where she ultimately slipped and fell on it. Rather, she contends that the piece of tile was already in that location on the main store floor before she entered the store. Again, the video footage, considered along with the other evidence, might be interpreted as showing that to have been so.

Plaintiff's concessions that she did not see anything on the floor until after she fell and that she did not immediately perceive that she had stepped on something also do not call for entry of summary judgment. As explained, the Stanley Cam Video and the Vestibule Video can be interpreted as corroborating Plaintiff's claim that her foot slipped out from under her at exact the place where something appears on the images as a spot slightly darker than the lighter floor tiles, and that, right after she fell, the spot appears to move next to Plaintiff's foot. Plaintiff further testified that, although she did not see or feel anything under her foot contemporaneously with her fall, she says that she observed immediately thereafter, as she was still on the floor, that the broken piece of brown tile was "caught up" under the heel of her boot. (*See* Pl. Depo. at 102-103, 105, 106, 110, 129). Plaintiff has thus inferred and unequivocally asserted that her fall was caused by her having stepped and slid on that broken tile piece. The undersigned concludes that, based on the circumstances shown by the evidence, Plaintiff's inference is a reasonable one that might likewise be drawn by the trier of fact. *See Harris*, 685 So. 2d at 762 (holding that plaintiff's "admission that she was not looking down when she slipped and thus could not be absolutely sure that she had slipped on the sand and cigarette butts" in parking lot did not entitle the defendant to summary judgment; rather, a jury question was presented by plaintiff's testimony that "immediately after falling she noticed the sand and cigarette butts on the ground where she had

fallen," that she had "noticed a slide mark in the sand and a corresponding scratch on her shoe," and her statement, "I know that I felt something as I was sliding. I knew that I had not just slipped on asphalt."); *Hooks v. Dollar Gen. Corp.*, 2015 WL 6964289, at \*2, 4-5 (M.D. Ala. Nov. 10, 2015) (holding that the plaintiff's testimony presented a jury question on causation where she testified that she fell because she stepped on a loose piece of broken concrete on the handicap ramp at the store entry, that "a piece came off the ramp after [the] fall" and was "laying beside" her); *see also Stephens v. City of Montgomery*, 575 So. 2d 1095, 1096-97 (Ala. 1991) (while stating that the plaintiff did "not know exactly what she tripped over," she had stated that she "tripped on the sidewalk" and testimony from witness at the scene supported that, at the place where the plaintiff fell, the sidewalk was uneven, with one portion approximately one inch higher than another); *Ten Ball Novelty & Mfg. Co. v. Allen*, 51 So. 2d 690, 693–94 (Ala. 1951) (rejecting defendant's claim that the jury's verdict for the plaintiff "was based on speculation and conjecture" where the plaintiff testified she "was looking ahead and not down at her feet" and "did not see what caused her to fall until after she had fallen and was getting up").

The multiple cases that Wal-Mart relies upon for the contrary proposition (*see* Dft. Brief at 15-18) are distinguishable. In one, the court held that the plaintiff's testimony on causation was speculative where she alleged that her accident was caused by a defect on the premises that she did not even claim to have discovered to exist until she returned to the store "a couple of weeks after her fall." *See Rosson*, *supra*, 2019 WL 1429172, at \*1. In another, the court similarly held that the evidence was insufficient to support the plaintiff's theory that he she had slipped on wet paint on a ramp leading to the defendant's store entrance where such was based entirely on plaintiff's testimony that she had discovered yellow paint on the bottom of her shoe only after she had returned home from the emergency room following her fall, and the defendant had presented

unrebutted evidence that there had been no recent paint work on the ramp.  *See Logan, supra*, 594 So. 2d at 83-85.  In two of Wal-Mart's other cited cases, plaintiffs had identified certain dangerous conditions on the premises, but they were unable to take the next step required to show causation: assert that one of the identified conditions not only existed but *also had, in fact, caused them to fall.  See Ex parte Harold L. Martin Distributing Co.*, 769 So. 2d 313, 314-16 (Ala. 2000); *Ervin v. Excel Properties, Inc.*, 831 So. 2d 38, 44-45 (Ala. Civ. App. 2001).  In the final case cited by Wal-Mart, the Alabama Court of Civil Appeals held that the plaintiff had failed to provide testimony sufficient from which to infer that she had tripped on the alleged hazard noticed shortly after her fall, an elevator "misleveled" with the floor by several inches, as opposed to having just fallen for some other reason.  *See Shanklin v. New Pilgrim Towers, L.P.*, 58 So. 3d 1251, 1253-54 (Ala. Civ. App. 2010).  The inference of causation in this case is simply far stronger than in any of the above, as Plaintiff's testimony, the photographs, and the surveillance videos support that the defect of which Plaintiff complains, the broken piece of tile, was not only was present at the time of her accident but also was the cause of it.  Wal-Mart is therefore not entitled to summary judgment based on its argument that Plaintiff cannot present sufficient evidence of proximate cause.

### IV. Conclusion

Based on the foregoing, Wal-Mart's motion for summary judgment (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**.  Specifically, that motion is **GRANTED** as it pertains to Plaintiff's claim for wantonness, which is hereby **DISMISSED**.  Wal-Mart's motion is **DENIED** as it relates to Plaintiff's remaining claim for negligence.

The parties are **ORDERED** to confer and to file, within **TWO WEEKS** of the date of entry of this Memorandum Opinion and Order, a joint status report concerning next steps in this

case.  Such report should include whether the parties they believe magistrate-judge-led mediation would be beneficial.

DONE this 20th day of March, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE